## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LUIS DIEGO ZAPATA FONSECA, individually, and            CASE NO.: 18-10259
on behalf of all other similarly situated,

      Plaintiff,

v.

ROLAND FOOD, LLC, a New York limited
liability company, and ORBE, S.A., a foreign
corporation,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Luis Diego Zapata Fonseca ("Plaintiff"), individually, and on behalf of all similarly situated persons, by and through the undersigned counsel, hereby files this Class Action Complaint against Defendants ROLAND FOOD, LLC, a New York limited liability company ("ROLAND"), and ORBE, S.A. ("ORBE") (collectively "Defendants"), a foreign corporation, and in support thereof, respectfully alleges the following:

## I.      GENERAL ALLEGATIONS

1.      This is a consumer protection class action based on Defendants' co-dependent and conspiratorial scheme in importing, marketing, advertising, labeling, packaging, distributing, and selling ROLAND canned Octopus (the "Product"). The Product is sold based on false, deceptive, unfair, and/or misleading affirmative representations and omissions that are likely to mislead reasonable consumers who purchased the Product, like Plaintiff and members of the proposed Class. The Product is not Octopus – it is actually Squid (also known giant squid or *Dosidicus gigas*).

2.      The Product's uniform misrepresentations and omissions deceive and mislead reasonable consumers to believe that the Product is Octopus, when in reality, it is Squid, which is

1

cheaper, lower quality and more abundant than Octopus. Octopus is a rarer and more highly sought-after food delicacy than Giant Squid.

3.      As the supplier, packager, and importer of the Squid, Orbe knows or should know that it is not Octopus. As the distributor of the Squid, ROLAND knows or should know that it is not Octopus. However, despite this, Defendants jointly caused the Squid to be imported, supplied, and marketed to United States consumers as Octopus. Defendants both profit far more by selling cheap Squid as Octopus, to the detriment of reasonable consumers, like Plaintiff and members of the Class.

4.      Plaintiff and members of the putative Class have suffered injury in fact, lost money or property, and suffered economic damages as a result of Defendants' wrongful conduct in calling the Product Octopus, when it is really Squid. The Product is simply not what it was represented to be.

5.      Plaintiff brings this class action individually, and on behalf of all other similarly situated purchasers of the Product, throughout the United States during the Class Period (defined as the period extending four-years prior to the date of filing Plaintiff's Complaint, up to and including the date that Notice has been provided to the Class), seeking actual damages, statutory damages, punitive damages, restitution, disgorgement, injunctive relief, and all other available remedies and relief against Defendants, for their unlawful distribution, sales, marketing, and advertising of the Product as being Octopus when it is really Squid.

6.      Defendants' false and misleading representations and omissions violate state and federal law as detailed more fully below, including New York General Business Law section 349, New York General Business Law section 350 and common law

7.      Plaintiff expressly does not seek to impose or enforce any obligations, laws, rules, or regulations on the Defendants above or beyond those required by federal law.

## II.   <u>JURISDICTION AND VENUE</u>

8.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any

defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

9.      Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because during the relevant time period Plaintiff was considered a citizen of the State of California, Defendant ROLAND is considered a citizen of New York (and all of its individual members are considered citizens of a state other than California)), and Defendant Orbe is considered a citizen of a state other than New York. This Court has personal jurisdiction over Defendants because, *inter alia*, Plaintiff's claims against Defendants accrued within and/or emanated from this jurisdiction and judicial District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because Defendants conduct business in, and may be found in, this judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

### III.   PARTIES

11.     Plaintiff, Luis Diego Zapata Fonseca, is an individual, over the age of 18, and during the relevant time period and when he made his purchases he was considered a citizen of the State of California.

12.     All allegations herein are based on information and belief and investigation of Counsel and are likely to have evidentiary support after a reasonable opportunity to conduct discovery.

13.     At all times material hereto, ROLAND was and is a limited liability company, organized and existing under the laws of the State of Delaware, with a principal place of business located at 71 W. 23rd Street Fl 15, New York, New York, 10010.

14.     At all times material hereto, ORBE was and is a foreign for-profit corporation, located in Pontevedra, Spain. ORBE has substantial and not isolated business relationships in the State of New York and in the United States by virtue of its partnerships, joint ventures, and/or contractual relationships with various U.S. based entities selling its food products throughout the

3

country; it has engaged in substantial activity within New York and has, therefore, subjected itself to the jurisdiction of the Courts of this State.

15.     Plaintiff is informed and believes, and thereon alleges, that Defendants and its employees, subsidiaries, affiliates and other related entities, were agents, servants and employees of each other, and, each was acting within the purpose and scope of said agency and employment.

16.     Whenever referring to any acts or transactions of Defendants, such allegations shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction for Defendants while engaged in the scope of their duties.

## IV.     FACTUAL ALLEGATIONS

17.     Throughout the Class Period, Orbe has processed, packaged, imported, supplied, distributed, represented and sold the Squid in the Product as being Octopus, and otherwise conspired and acted in concert with ROLAND in the unlawful scheme. Moreover, based upon information and belief, Orbe declared the Squid to customs officials as Octopus to aid and abet Defendants' scheme.

18.     ROLAND is a food product brand with an array of packaged foods, including batter mixes, cereals, condiments, crackers, snacks, and other foods. Its food products are sold at small and large retailers, including supermarkets,  pharmacy chains, big box stores, and online throughout the United States.

19.     Orbe is a large seafood supplier and cannery that supplies various seafood products to United States based brands. At all times relevant, and during the relevant class period, it supplied and supplies the Product to ROLAND.  It also sells similar products to other United States brands including but not limited to Iberia Foods, Vigo Importing Co., and Conchita Foods, Inc. (all octopus sold in the United States which were and are supplied by ORBE shall be referred to as the "Orbe Cross-Brand Octopus Products").

20.     Orbe has, with the assistance of ROLAND, sold the Squid passed off as Octopus to consumers.

21.     The word "Octopus" is prominently displayed on the label of the Product. Nowhere on the box does it state that the Octopus Product contains Squid instead of Octopus. This bait-and-switch is   occurring, and has occurred throughout the Class Period, causing harm and economic damages to purchasers of the Product.

22.     ROLAND has labeled and sold its Octopus Products as octopus (or *pulpo*, Spanish for octopus). Independent DNA testing, however, has determined that ROLAND's Octopus Products (supplied by ORBE) is actually *dosidicus gigas* or giant squid and not octopus.

23.     Squid is significantly cheaper and of a lower quality than octopus. In fact, the squid undergoes a chemical treatment in order to make it more similar to octopus in its texture. This process also eliminates a very characteristic taste of the *dosidicus gigas* with chemical substances to obtain a neutral flavor. Additional testing has revealed that this bait-and-switch, and active concealment, is occurring throughout the Orbe Cross-Brand Octopus Products as well.

24.     A sample of the packaging is included for demonstrative purposes:



25.     Octopus and jumbo squid are both cephalopods, but are otherwise completely different species.



**Jumbo Squid**



**Octopus**

26.     The scientific classification for jumbo squid is as follows:

| Kingdom | Animalia |
|---|---|
| Phylum | Mollusca |
| Class | Cephalopoda |
| **Order** | **Teuthida** |
| **Family** | **Ommastrephidae** |

| Genus | Dosidicus |
|---|---|
| Species | Dosidicus gigas |

26.    The scientific classification Octopus is as follows:

| Kingdom | Animalia |
|---|---|
| Phylum | Mollusca |
| Class | Cephalopoda |
| Order | Octopoda |
| Family | Octopodidae |
| Genus | Octopus |
| Species | Octopus vulgaris |

27.    In recent years, the cost of octopus has increased rapidly as octopus populations have dwindled around the world due to over-fishing. In 2005, the European Union imposed new restrictions on octopus fishing because the octopus might be at risk of dying out if controls are not enforced to stop overfishing. Commission Takes Action to Safeguard Octopus Stocks, Oct. 12, 2005, European Commission Press Release, *available at* http://europa.eu/rapid/press-release_IP-05-1262_en.htm.

27.    In July 2014, it was reported that Octopus supplies had been falling, causing a dramatic increase in the price of Octopus ("[a] 45 percent decline in supply is pushing prices of octopus in Japan 50 to 60 percent higher than the same time period last year. In May, the volume of frozen uncooked octopus sold at public wholesale auctions in Tokyo was down 16 percent, while the price was up 30 percent from the same month in 2013"). Loew, Chris, *Japan Octopus Prices Up On Short West African Supply*, July 17, 2014, SeafoodSource.com, *available at* https://www.seafoodsource.com/news/supply-trade/japan-octopus-prices-up-on-short-west-african-supply.

27.    At the same time that Octopus populations have been declining, Squid populations have been thriving. In May 2013, Stanford biologist William Gilly gave a TED talk in which he

explained that the Squid is  thriving due to its ability to adapt to changing ocean conditions caused by global warming.  *See TEDxStanford Highlights Breakthroughs in Research and Creativity, Stanford-style,* May 13, 2013, Stanford News, *available at* http://news.stanford.edu/news/2013/may/tedx-at-stanford-051213.html.

28.     As a result of these developments, the cost of Octopus has risen dramatically compared to the cost of Squid. In addition, due to similarities in the size and outward appearance of the tentacles, Squid can easily be substituted for, and falsely represented as Octopus, particularly here, when sold in a sauce like garlic sauce or marinara sauce.

29.     Plaintiff is informed and believes that Orbe and ROLAND have either negligently and/or intentionally replaced the Octopus in its Octopus Products with Squid as a cheap substitute to save money because they knew an ordinary consumer would have trouble distinguishing the difference.

30.     Defendants have unlawfully profited through their marketing, advertising, labeling, packaging, distributing, and selling of the Product as being Octopus on the front labeling of the Product, because the statement is a false, deceptive, and an unfair affirmative representation likely to mislead reasonable consumers who purchase the Product believing it to be Octopus, when it is really Squid.

31.     Accordingly, the advertising, marketing, and labeling for the Product is deceptive and misleading because reasonable consumers are led to believe that the Product is of a higher grade and quality than its true value because it is not Octopus, but rather Squid.

32.     Defendants capitalize on their superior knowledge of the Octopus and Squid industry, and consumers' inability to discern the truth about the Product from its label.

33.     Defendants induce consumers to purchase the Product by representing that the Product is Octopus.

34.     Defendants, as reputable and knowledgeable suppliers and sellers of seafood products, know or should know that the Product is not Octopus.

**Defendants Acted Together in Misrepresenting that the Product is Octopus**

35.     Upon information and belief, Orbe directly engages in and assists with the deceptive misrepresentation that the Product is Octopus when it is really Squid.

36.     Orbe has imported, canned, packaged, supplied, distributed, represented and sold the Squid in the Product as being Octopus, and otherwise conspired and acted in concert with ROLAND in the unlawful scheme.

37.     Orbe is directly involved with the packaging of the Product.

38.     Upon information and belief, Orbe, had or has the right to control the nature and content of ROLAND's labels, and/or did control them, and is thus a participant in the consumer transactions with Plaintiff and members of the Class. Defendants either jointly decided or were complicit in each conduct to falsely label the Product.

39.     Upon information and belief, Defendant, Orbe also misrepresented, omitted, or falsified information in export documentation in Spain, and/or import documentation in the United States, to aid and abet in Defendants' unlawful scheme.

40.     Notwithstanding Orbe's directives to ROLAND, ROLAND is required to abide by, and not circumvent, state consumer protection laws.

41.     ROLAND could and should have resisted Orbe's instructions by either calling the Product Squid, instead of Octopus, or refusing to purchase from Orbe, Instead, Defendants agreed to the scheme to further their respective economic interests to the detriment of United States consumers. Orbe canned and packaged the Squid, despite importing it as Octopus, and then ROLAND sold the Product to consumers under its brand – Defendants acted in concert, each carrying out their respective roles in the supply chain to carry out their scheme.

42.     Orbe imports and distributes food products either under its own brands or private labels, to supermarkets, convenience stores and other retail outlets throughout the United States. Thus, Orbe is subject to nationwide jurisdiction as it has purposely availed itself to every State in the United States.

43.     Likewise, Orbe, as a foreign company, is subject to nationwide jurisdiction. Because it's Squid is sold nationwide, and it does not have a principle place of business or incorporation in any U.S. State, no individual State's interest is greater than another State's in policing Orbe's conduct.

44.     Moreover, because the Products are sold online nationwide with the identical misrepresentation, every consumer, no matter the physical purchase location or whether purchased online, was deceived, misled, and injured in the same way.

45.     Defendants' businesses models and business strategies are intertwined and connected. For example, Orbe monitors ROLAND to ensure that ROLAND meets Orbe's expected standards and the specifications. The company plays an active role in choosing the agricultural products and overseeing the production, packaging and marketing processes.

46.     Therefore, both Defendants have actual knowledge of, and participated in, this seafood fraud.

47.     Defendants have acted in concert to further their individual and joint ventures.

48.     Defendants are individually, and jointly and severally liable, for each other's conduct and the resultant harm to Plaintiff and the Class.

49.     Defendants engaged in a civil conspiracy in that they agreed to commit the unlawful act of selling mislabeled seafood to U.S. consumers and they each committed the overt acts described herein for purposes of furthering the conspiracy. Defendants conspiratorial acts caused the Product's to be mislabeled and resulted in economic harm to Plaintiff and the Class. Both Defendants had knowledge of the seafood fraud and understood their mutual goals of extracting unjust profits from U.S. consumers. Based on information and belief Defendants' agreement to further the scheme occurred both in the U.S. and abroad.

50.     Additionally, and/or alternatively, Defendants acted in concern with one another. A concert of action between the Defendants occurred because there was an understanding between them, either expressly or tacitly, to participate in a common plan to deceive consumers. Each Defendant played their respective role in the wrongful conduct for their common benefit.

51.     Additionally, and/or alternatively, Defendants aided and abetted in each other's wrongful conduct. Orbe aided ROLAND in its unlawful labeling by packaging and supplying canned Squid rather an Octopus, and ROLAND aided Orbe in importing and supplying canned Squid by agreeing to purchase and sell it as Squid for purchase by consumers. Based on the above, each Defendant was aware of the other's wrongful acts, and each gave substantial assistance or encouragement to one another.

52.     Defendants knowingly and intentionally hid the fact that the Product contains Squid so they could earn additional profit at the consumer's expense, like Plaintiff and members of the Class, who believed they were purchasing Octopus when they purchased the Product.

53.     Defendants misrepresented that their Squid products were Octopus during the Class Period in order to charge a price premium for Squid, by making Plaintiff and Class Members believe it was Octopus, rather than Squid.

### Plaintiff's Purchase of the Product

54.     Plaintiff purchased the Product during the Class Period (defined below), in reliance on the misleading labeling representations that the Product is Octopus. Based on the Octopus claims on the Product's front label, Plaintiff believed that the Product was Octopus when he purchased the Product, and this fact was the material reason for Plaintiff purchasing the Product.

55.     More specifically, Plaintiff has purchased the Product, Roland Octopus, Spiced with Vegetables.  However, subsequent to purchasing the Product Plaintiff discovered that the Product is not Octopus, which is what Plaintiff intended to purchase.

56.     Had the Product not claimed to be Octopus, Plaintiff would not have purchased it, or alternatively, would not have purchased it at the premium price he did had he known it was Squid.

57.     Based upon independent work-product investigation of counsel, the Product purchased by Plaintiff was Squid, not Octopus. Likewise, based upon information and belief the Products purchased by consumers nationwide were Squid, not Octopus.

58.     Plaintiff would not have purchased the Product at all had Defendants not made the Octopus claims, which she read on the label and relied upon in making her purchase decision. At a

minimum, Plaintiff would not have paid as much for the Product or purchased the Product at the price premium he did. Plaintiff and members of the putative Class relied, to their detriment, on Defendants' material statements regarding the Product being Octopus in making their decision to purchase the Product.

59.     Reasonable consumers, like Plaintiff and members of the putative Class, must and do rely on label representations and information on the Product's label in making their decision to purchase the Product. Plaintiff and members of the putative Class were among the intended recipients of Defendants' deceptive representations and/or omissions.

**Defendants' Unlawful Conduct is Ongoing**

60.     Defendants' false, misleading, and deceptive misrepresentations and/or omissions are likely to continue to deceive and mislead reasonable consumers, and the general public. Absent an enforceable injunctive order from this Court Defendants will continue to deceive and mislead Plaintiff and members of the putative Class.

61.     Defendants made the deceptive representations and/or omissions related to the Product with the intent to induce Plaintiff's and other members of the putative Class' purchase of the Product.

62.     Defendants' deceptive representations and/or omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

63.     Thus, Plaintiff's and members of the putative Class' reliance upon Defendants' misleading and deceptive representations and/or omissions has been met and may be presumed.

64.     Furthermore, the materiality of those representations and/or omissions also establishes causation between Defendants' conduct and the injuries sustained by Plaintiff and members of the putative Class because they would not have purchased the Product if it did not claim to be "Octopus," or alternatively, they would not have paid as much for it.

65.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Defendants injured Plaintiff and members of the putative Class in that Plaintiff and members of the putative Class:

a.  paid a sum of money for Product that were not as represented;

b.  paid a premium price for Product that were not as represented;

c.  were deprived the benefit of the bargain because the Product they purchased were different from what Defendants warranted;

d.  were deprived the benefit of the bargain because the Product they purchased had less value than what Defendants represented;

e.  did not receive the Product that measured up to their expectations as created by Defendants;

f.  received a Product that contained Squid, which was not the Octopus that was represented by Defendants;

g.  received a Product that was of a different quality than what Defendants promised; and

h.  were denied the benefit of truthful labels.

66.    Had Defendants not made the false, misleading, and deceptive representations and/or omissions, Plaintiff and members of the putative Class would not have purchased the Product and thus would not have been injured.

67.    Plaintiff and members of the putative Class all paid money for the Product.

68.    However, Plaintiff and members of the putative Class did not obtain the full value of the advertised Product due to Defendants' misrepresentations and/or omissions.

69.    Plaintiff and putative Class members suffered economic damages as a result of purchasing the valueless, worthless, and/or inferior Product in light of what they intended to purchase.

70.    Specifically, Plaintiff contends there is no legal market value for an unlawfully misbranded Product, so Plaintiff and members of the Class are entitled to reimbursement of the full purchase price for each and every purchase of the Product during the Class Period.

71.    Plaintiff and members of the putative Class are further entitled to declaratory and equitable relief, including, but not limited to, injunctive relief, restitution, and/or disgorgement. Plaintiff and members of the putative Class seek injunctive relief in the form of an Order prohibiting Defendants from falsely and misleading selling the Product.

13

72.     Plaintiff also seeks restitution for monies wrongfully obtained by Defendants and disgorgement of all ill-gotten revenues and/or profits from the sale of the Product.

73.     Plaintiff would like to, and intends to, continue purchasing the Product in the future. However, as a result of Defendants' wrongful acts, Plaintiff and other reasonable consumers can no longer rely on the truth and accuracy of Defendants' Products. Absent an injunctive order, Plaintiff and other reasonable consumers are prevented from making a meaningful and informed choice about seafood they are purchasing and are otherwise at continued risk of real and immediate threat of repeated injury, including purchasing deceptively labeled and packaged Products sold at inflated prices above their true market value. Plaintiff is seeking an enforceable injunctive order preventing Defendants from continuing to sell the Product's unless and until all Product's contain Octopus, not Squid. Plaintiff also seeks an injunctive order prohibiting Orbe from importing any Squid that is represented to be Octopus in connection with all other brands that it supplies to.  At the present, Defendants' labels cannot be trusted, and she continues to be deceived.

## V.     CLASS ACTION ALLEGATIONS

74.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

75.     This action is maintainable as a class action under Rule 23(a) and (b)(3) of the *Federal Rules of Civil Procedure.*

76.     Pursuant to *Federal Rule of Civil Procedure* 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all persons in the United States who have purchased the Product for personal use and not for resale, from the period extending four-years prior to the date of filing this Complaint, up to and including the date that Notice has been provided to the Class.**

77.     In the alternative to a nationwide Class, Plaintiff reserves the right to amend the Class

definition if further information and discovery indicates that the Class definition should be narrowed, expanded or otherwise modified, including the creation of sub-classes.

78.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

79.     Also, excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

80.     Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded or otherwise modified

81.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

**Numerosity—*Federal Rule of Civil Procedure* 23(a)(1)**

82.     The members of the Class are so numerous that it is impracticable to bring all members of the Class before the Court, and thus, individual joinder of all class members is impracticable.

83.     The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network.

84.     Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—*Federal Rules of Civil Procedure* 23(a)(2) and (b)(3)**

85.     This action involves substantially similar common questions of law or fact, which predominate over any questions affecting individual members of the Class.

86.     All members of the Class were exposed to Defendants' deceptive and misleading advertising and marketing claims and/or omissions alleged herein.

87.     Furthermore, common questions of law of fact include:

a) Whether Defendants engaged in the conduct as alleged herein;

b) Whether Defendants' practices and representations related to the marketing, labeling and sales of the Product was unfair, deceptive, fraudulent, and/or unlawful in any respect;

c) Whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief; and

d) Whether Plaintiff and the other members of the Class are entitled to declaratory and equitable relief, including but not limited to injunctive relief, restitution, and disgorgement.

88.     Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce, individually and on behalf of the other members of the Class.

89.     Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**Typicality—*Federal Rule of Civil Procedure* 23(a)(3)**

90.     Plaintiff's claims or defenses are typical of the claims or defenses of the members of the Class.

91.     Plaintiff and members of the Class were comparably injured through Defendants' uniform misconduct described herein, and there are no defenses available to Defendants that are unique to Plaintiff.

**Adequacy of Representation—*Federal Rule of Civil Procedure* 23(a)(4)**

92.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is an adequate representative of the Class because, Plaintiff's interests align with, and do not conflict with, the interests of members of the Class that Plaintiff seeks to represent.  The Class' interests will be fairly and adequately protected by Plaintiff because Plaintiff has retained counsel competent and experienced in consumer protection and complex class action litigation, and Plaintiff will prosecute this action

diligently and vigorously. Plaintiff's counsel has represented consumers in a variety of class actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—*Federal Rule of Civil Procedure* 23(b)(2)**

93.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**Predominance —*Federal Rule of Civil Procedure* 23(b)(3)**

94.     As set forth in detail herein, common issues of fact and law predominate because all of Plaintiff's claims are based on a uniform false and misleading advertising message which all class members were necessarily exposed to.

**Superiority—*Federal Rule of Civil Procedure* 23(b)(3)**

95.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

96.     Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class' claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### COUNT I
**(Violation of New York General Business Law Section 349)**

97.     Plaintiff repeats each and every allegation contained in the paragraphs 1-95 above and incorporates such allegations by reference herein.

98.     Plaintiff brings this claim on behalf of himself and on behalf of the other members of the Class, pursuant to New York General Business Law section 349 ("GBL 349").

99.     GBL 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

100.    Defendants transact business in New York and committed the deceptive acts alleged herein in New York.

101.    As fully alleged above, by importing, advertising, marketing, labeling distributing, and/or selling the Product as Octopus to Plaintiff and the Class members, Defendants engaged in, and continue to engage in, deceptive acts and practices because the Product is in fact comprised of squid.

102.    Plaintiff the Class members believed Defendants' representation that the Products they purchased were octopus. Plaintiff and the Class Members would not have purchased the Product, or would not have purchased the Product at a premium price, had they known the Product was not actually octopus.

103.    Plaintiff and the Class members were injured in fact and lost money as a result of Defendants' conduct of improperly describing the Products as octopus. Plaintiff and the Class members paid for octopus but did not receive such a product.

104.    The Product Plaintiff and the Class members received was worth less than what they paid. Plaintiff and the Class members paid a premium price because of Defendants' misrepresentations that the Products were octopus.

105.    By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of GBL 349, and Defendants are liable to Plaintiff and the Class members for the actual damages that they have suffered as a result of Defendants' actions. The amount of such damages is to be determined at trial, but will not be less than $50.00 per violation. N.Y. Gen. Bus. Law § 349(h).

106.   Plaintiff and the Class members seek to enjoin such unlawful, deceptive acts and practices described above. Each of the Class members will be irreparably harmed unless the Court enjoins Defendants' unlawful, deceptive actions in that Defendants will continue to falsely and misleadingly advertise the Products as octopus, as detailed herein.

107.   Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 349.

## COUNT II
### (Violation of New York General Business Law Section 350)

108.   Plaintiff repeats each and every allegation contained in the paragraphs 1-95 above and incorporates such allegations by reference herein.

109.   Plaintiff brings this claim on behalf of himself and on behalf of the other members of the Class, pursuant to New York General Business Law section 350 ("GBL 350").

110.   GBL 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

111.   Defendants transact business in New York and committed the deceptive acts alleged herein in New York.

112.   As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were octopus to Plaintiff and the Class members, Defendants engaged in, and continue to engage in, false advertising because the Product is in fact squid.

113.   Plaintiff and the Class members believed Defendants representations that the Product they purchased was octopus. Plaintiff and the Class members would not have purchased the Product nor would have purchased the Product at a premium price, had they known the Product was not actually octopus.

114.   Plaintiff and the Class members were injured in fact and lost money as a result of Defendants' conduct of improperly describing the Products as octopus. Plaintiff and the Class members paid for octopus but did not receive such Products.

19

115.    The Product Plaintiff and the Class members received were worth less than the Product for which they paid. Plaintiff and the Class members paid a premium price on account of Defendants' misrepresentations that the Products were octopus.

116.    By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes false advertising in violation of GBL 350, and Defendants are liable to Plaintiff and the Class members for the actual damages that they have suffered as a result of Defendants' actions. The amount of such damages is to be determined at trial but will not be less than $500.00 per violation. N.Y. Gen. Bus. Law § 350(e).

117.    Plaintiff and the Class members seek to enjoin such unlawful, false advertising described above. Each of the Class members will be irreparably harmed unless the Court enjoins Defendants' unlawful, false advertising in that Defendants will continue to falsely and misleadingly advertise the Products as octopus, as detailed herein.

118.    Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 350.

## COUNT III
### (Restitution Based on Quasi-Contract/Unjust Enrichment)

119.    Plaintiffs repeat each and every allegation contained in the paragraphs 1-95 above and incorporate such allegations by reference herein.

120.    Defendants' representation that the Products are octopus constitutes an affirmation of fact.

121.    Defendants' representations that the Product is octopus is part of the basis of the bargain between Defendants and purchasers of the Products.

122.    Defendants made the above-referenced representations in order to induce Plaintiff and the Class members to purchase, and to pay a premium price for, the Products, and Plaintiff and the Class members relied on the representations in purchasing the Products.

123.    Defendants' conduct in inducing Plaintiffs and the Class members to purchase, and to pay a premium price for, the Products by the above-referenced representations is unlawful because the representations about the Products are untrue. Defendants took money from Plaintiff and the Class members based on these misrepresentations, even though the Product does not conform to those representations.

124.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Product, Defendant was enriched at the expense of Plaintiff and the other Class members through the payment of the purchase price, and payment of a premium price, for the Product, thereby creating a quasi-contractual obligation on Defendant to restore those ill-gotten gains to Plaintiffs and the Class members.

125.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other Class members, in light of the fact that the Products purchased by Plaintiff and the other Class members were not what Defendants purported them to be. Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendants for such Products.

126.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members are entitled to restitution or restitutionary disgorgement, in an amount to be proven at trial.

127.    Wherefore Plaintiffs, on behalf of the Class, prays for relief as set forth herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Putative Class, pray for relief as follows:

A.    For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representatives, and that Plaintiff's counsel be appointed counsel for the Class;

B.      For an order declaring Defendant's conduct to be in violation of G.B.L. 349 and G.B.L. 350, and enjoining Defendants from pursuing the unlawful acts and practices alleged herein;

C.      For an order requiring Defendants to pay full restitution to Plaintiff and all members of the Putative Class;

D.      For an order requiring Defendants to disgorge all ill-gotten gains flowing from the conduct alleged in this Complaint;

E.      For an award of actual damages in an amount to be determined at trial;

F.      For an order awarding reasonable attorneys' fees and the costs;

G.      For an award of pre- and post-judgment interest on any amounts awarded; and

H.      For such other and further relief as may be deemed just, necessary or proper.

Dated this 5th day of November, 2018.

Respectfully submitted,

**RICHMAN LAW GROUP**
Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

**SALPETER GITKIN, LLP**
James P. Gitkin, Esq. Fla.
Fla. Bar No. 570001
*Pro Hac Vice To Be Filed*
One East Broward Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Telephone:  (954) 467-8622
Facsimile:  (954) 467-8623
jim@salpetergitkin.com

**EGGNATZ | PASCUCCI**
Joshua H. Eggnatz, Esq.

Fla. Bar No.: 0067926
*Pro Hac Vice To Be Filed*
Michael J. Pascucci, Esq.
Fla. Bar No.: 0083397
*Pro Hac Vice To Be Filed*
5400 S. University Drive, Ste. 417
Davie, FL 33328
Tel:    (954) 889-3359
Fax:    (954) 889-5913
JEggnatz@JusticeEarned.com
MPascucci@JusticeEarned.com

*Attorneys for Plaintiff and the Putative Class*